Nicholas, Jr., Appellant, *v.* The Yellow Cab Co. et al., Appellees.*

---

*Motion to certify the record overruled (37594), October 17, 1962.

(No. 25587—Decided February 28, 1962.)

*Messrs. Day & Berkman* and *Mr. Edwin J. Ketchel,* for appellant.

*Messrs. Burke, Haber & Berick* and *Mr. Thomas P. Meaney, Jr.,* for appellees.

SKEEL, J. This appeal comes to this court on questions of law from a judgment of the Court of Common Pleas entered for the defendant on the verdict of a jury. The action was based on a claim of negligence.

The proceeding now before the court is a motion for reconsideration under Section 2505.071, Revised Code. After the first presentation of the case, this court affirmed the judgment, noting in the entry that the bill of exceptions was not sufficiently complete to demonstrate the claimed errors.

On August 15, 1955, the plaintiff was a passenger in one of defendant's taxicabs and, while being driven to his destination, a collision occurred between the cab and an automobile driven by one George Askew. The site of the collision was at the intersection of Willey and Train Avenues in the city of Cleveland. The taxicab was being driven south on Willey Avenue and, as

was required by a stop sign there maintained, the driver of the cab brought his vehicle to a complete stop at the intersection of Willey Avenue and Train Avenue. Train Avenue runs in a general easterly and westerly direction at this intersection. The cab remained standing to permit east and west traffic to clear the intersection. To the west of this intersection, Train Avenue curves, so that traffic moving eastward is visible for a distance of about two hundred to two hundred fifty feet to vehicles heading south on Willey Avenue and stopped at the intersection. The cab driver remained standing until traffic cleared, it being plaintiff's version that the last westbound vehicle was a ''van-type'' truck. As the truck proceeded westward, the taxi driver, believing the intersection clear, started to cross Train Avenue and, as he did so, the plaintiff, looking westward, caught a glimpse of an eastbound automobile as it passed the truck a short distance to the west of the intersection. He claims to have shouted a warning to the driver but nevertheless the cab, as it proceeded through the intersection, was struck at the rear end by the eastbound vehicle previously observed by plaintiff. The cab driver's version of the collision was that, after stopping and waiting for traffic moving east and west on Train Avenue to clear the intersection and after it did clear, he started forward when an eastbound automobile suddenly came around the curve from the west into his view at fifty miles per hour. The taxi driver testified that it was his judgment, under the emergency, to try to clear the intersection, that he accelerated the cab by pressing the throttle to the floor, the cab then being in first gear, that, when he had proceeded to a point where only the rear of the cab was in the intersection, the eastbound automobile struck the cab at the extreme rear, the eastbound driver not attempting to slow down or to swerve to the left, and that by the force of the collision the cab was turned completely around so that when it stopped it was headed north at the south side of the intersection.

The driver of the eastbound automobile, who was involved in the collision, was made a party defendant to this action but was dismissed upon the trial of the case because service of summons was returned by the sheriff ''not found'' and no alias praecipe for service was filed. However, he was called as a rebuttal witness by the plaintiff.

The bill of exceptions which was filed does not contain all the evidence presented at the trial. It is clear from the record that the plaintiff did not intend to file a complete bill of exceptions and that that part which is missing was left out purposely and not by accident or mistake. The record shows that the plaintiff, by motion in this court, asked to amend the bill of exceptions by adding additional parts of the testimony (the complete testimony of the witness Askew on rebuttal), such motion being filed after the time for filing a bill of exceptions had passed, and which motion this court overruled.

During the trial of the case, the defendant represented to the court that the defendant's taxi driver was confined as a patient at Sunny Acres Hospital and that it had just been informed that he could not be released to testify in court. The court, after hearing evidence and considering an affidavit presented, as shown by the memorandum opinion of the trial judge filed with the papers in the case, granted a continuance for the purpose of taking the deposition of this witness, which, when taken, was then read in its entirety (both direct and cross-examination) at the trial, which procedure was objected to by the plaintiff. The court, in considering the defendant's request for a continuance, offered the plaintiff one of two choices under the circumstances—that is, either a continuance of the case for retrial at a future date or to suspend the trial long enough to take the deposition of the witness confined in the hospital. At the conclusion of the trial, a verdict was returned for the defendant and signed by nine jurors, upon which verdict judgment was entered.

The question of the sufficiency of a partial bill of exceptions, filed by an appellant to demonstrate the errors claimed, is one for the determination of the appellate court. Where the error claimed involves the weight and sufficiency of the evidence, or that the judgment is contrary to law, or that the court's charge was erroneous, the bill of exceptions must contain the certificate of the trial judge that it contains all the evidence presented upon trial. *Regan, Admx., v. McHugh,* 78 Ohio St., 326. Otherwise the bill of exceptions must contain that part of the record and testimony of the witnesses and the proceedings of the trial that has any factual or legal relationship to the

questions involved to enable the reviewing court to pass upon the errors claimed.

The first error set out by the plaintiff is that the court, after plaintiff had concluded his case, upon motion of the defendant, continued the trial of the case from the close of court, October 13, 1960, until the next afternoon at 1:30 p. m., in order to permit the taking of the deposition of William Lasky (the driver of the cab) at 9:30 a. m., October 14, 1960, at Sunny Acres Sanitarium where he was then confined as a patient. The objection of the plaintiff was, in part, based on the fact that Section 2319.26, Revised Code, could not be complied with (that is the filing of a deposition one day before trial), and further, that the court, in granting the continuance, coerced the appellant into agreeing to the taking of such deposition on the morning of October 14, 1960, and into permitting it to be read to the jury after the trial was reconvened that afternoon. The record clearly shows that the plaintiff was given the choice of having a mistrial declared and the case returned to the assignment room for reassignment at a later date or taking the deposition of the witness then confined in the hospital. The claim of the defendant that it had not been negligent in believing the witness would be available for trial until it was too late was supported by an affidavit filed with the motion and the testimony of one witness. The testimony of such witness and the affidavit filed with the motion are not a part of the record or contained in the bill of exceptions as certified to by the court. It must be presumed that the court did not abuse its discretion in granting the short continuance and permitting the presentation of the testimony of the only fact-witness of the defendant, whose testimony is contained in the bill of exceptions. Therefore, without the record of the evidence upon which the court acted in granting the motion for a continuance, a claim of error based on the granting of such motion must be overruled.

The second claim of error concerns the court's charge dealing with the standard of care required of the defendant as a common carrier of passengers. The court granted plaintiff's special request to charge before argument and read the charge requested, defining the duty of the defendant as a common carrier of passengers, which was, in fact, the relationship of the defendant's taxicab company to the plaintiff when the accident

occurred. The charge, as given, and as set out in the briefs, was a correct statement of the law. However, the charge is not contained in the bill of exceptions. At the conclusion of the court's general charge (except for questions of damage, the duty of the jury in weighing the testimony of witnesses, the electing of a foreman, and the manner of returning a verdict) the court said (addressing counsel), "Anything further before we go to the damages, if any." The plaintiff, among other things, then said: "If your Honor please, you have said nothing so far that I heard about the highest degree of care or any definition of that.

"The Court: I gave that in the charge before argument."

The record then shows, after considerable argument, the following:

"Mr. Day: But you cannot separate them.

"The Court: What else?

"Mr. Meaney: That is all. Thank you."

(Thereupon proceedings were resumed within the hearing of the jury, as follows):

"The Court: Ladies and gentlemen, the court has been requested to give you further charges in this case. I have already charged you in charge No. 1, and other various charges, including charge No. 14, before argument, and we are not attempting to repeat those, but we will do so in the interest of clarity.

"The Court says to you, members of the jury, as a matter of law, that it was the duty of the driver of the taxicab in which plaintiff was riding as a passenger to exercise the highest degree of care consistent with the practical operation of the taxicab to avoid injuring the plaintiff. That is the law of Ohio, and that means that the highest degree of care which an ordinarily prudent driver would use under the same or similar circumstances, and the duty of the taxicab driver to exercise the highest degree of care which an ordinarily prudent man would use goes with the plaintiff, must use, during the whole of the time that he is driving the plaintiff.

"In other words, it doesn't merely start out with that duty and the duty ceases, but the highest degree of care which an ordinarily prudent man uses in driving a taxicab at the time and place indicated in this evidence must be used by the defendant's taxi-driver."

Thus, it is at the beginning and at the end of the court's instructions, both before argument and in its general charge, that the degree of care which the defendant is required to exercise to provide for the safety of the plaintiff while a passenger in its taxicab was clearly defined, and it was clearly stated that the failure on the part of the defendant to exercise such degree of care constituted negligence. The complaint that in the general charge the court defined negligence as "the failure to exercise ordinary care, that care which an ordinary prudent man or woman would use under the same or similar circumstances," when considered with the charge in its entirety, could not have confused the jury. In the plaintiff's petition, it was alleged that the defendant negligently failed to exercise the highest degree of care as required by law of it as a common carrier for hire in the following particulars, to wit: (followed by the allegations of negligence), which pleading was with the jury during their deliberations as was plaintiff's special instruction No. 1, setting out the degree of care that is required by law of a common carrier. This, together with that part of the general charge, above quoted, clearly sets out that negligence in a case against a common carrier of passengers is the failure to exercise the care required of a prudent cab driver, that is, the highest degree of care consistent with the practical operation of the cab, in clear and understandable terms. Assignment of error No. 2, therefore, is not well taken.

It is further claimed that the trial court erred in summarizing the evidence in its charge to the jury. It is also claimed that such summarization was, in fact, inaccurate and unfair to the plaintiff. A reading of the charge will disclose that the court's comment on the evidence was, in fact, only a general statement as to what plaintiff and plaintiff's witness, Askew, had stated from the witness stand and what the defendant's driver's testimony purported to be as presented by his deposition. Whether these statements were inaccurate, even in the slightest, cannot be fairly contested as plaintiff's testimony on cross-examination and the greater part of the testimony of the witness, Askew, is not certified to in the bill of exceptions. Only the direct testimony of the plaintiff and a limited part of the cross-examination of the witness, Askew, is set out. Insofar as the record sets out the testimony, no inaccuracy is called to

our attention except that at one place the court was in error as to the direction in which defendant's driver looked to observe the traffic light at the intersection of Scranton Road and Train Avenue. This error was corrected at the end of the charge at plaintiff's request. The court did not attempt to invade the province of the jury by giving its belief or opinion of the facts to be drawn from the evidence. All that was done was to call the jury's attention to the testimony of some of the witnesses and the result that would obtain as a matter of law, depending upon the juror's conclusions of fact when considering such evidence. Assignment of error No. 3 is, therefore, overruled.

The fourth assignment of error is directed at the refusal of the trial court to give plaintiff's special request (No. 3) to charge before argument on the question of damages. Since the verdict of the jury was for the defendant, any error in the charge on the subject of damages would not be prejudicial to the plaintiff.

The fifth and sixth assignments of error concern the giving of defendant's special instructions Nos. 12 and 13 before argument as requested in writing. These instructions concerned the duty required of a party to an action in negligence where the evidence tends to establish a "sudden emergency" and the law relating to the obligation of a driver of a motor vehicle not to drive at a greater speed than will permit him to stop within the assured clear distance ahead as defined by statute. Both these charges, as set out in the bill of exceptions, are correct statements of the law on the subject with which they deal. A reading of the partial bill of exceptions shows that both these principles of law were clearly applicable to issues of fact involved in the case and supported by some evidence. However, without a complete bill of exceptions, the plaintiff's claims on this assignment of error cannot be determined. As the record stands, it would have been error not to have given these instructions as requested.

During the course of the trial, the defendant's taxi driver testified that the cab he was driving was controlled by a speed governor which held the speed of the cab in crossing Train Avenue from five to ten miles per hour when driving in first gear. When this fact was brought to plaintiff's attention, a request was made, after both sides had concluded the presentation

of their evidence, to add two additional specifications of negligence, as follows:

"(1) In placing a mechanical governor on its taxicab to so control the speed in low gear that its agent and driver could not remove the cab from the place of danger after discovering said danger.

"(2) In moving its taxicab into opposing lanes of traffic with the governor so set that in the exercise of the highest degree of care said taxicab could not clear the intersection without collision with west-east traffic."

If there were evidence to support these claims or that operating a taxicab controlled by a speed governor constitutes negligence, such evidence is not contained in the partial bill of exceptions certified by the trial judge and for that reason this claim of error must be overruled.

It is also claimed by the plaintiff that the court erred in striking two of plaintiff's allegations of negligence from his petition. The claims of negligence were as follows:

"(2) In operating its taxicab at a rate of speed in excess of that which was reasonable and proper having due regard for the circumstances then and there prevailing, to wit: 25 miles per hour.

"(3) In failing to bring its taxicab to a stop or divert its course to avoid colliding with the automobile driven by George Askew after having seen the same, or after, in the exercise of the highest degree of care it should have seen the same."

As to the first of these specifications of negligence (No. 2 above), there is no evidence recorded in the partial bill of exceptions that supports the claim that defendant's taxicab, during the period before the collision, was operated at a speed in excess of twenty-five miles per hour or in excess of any reasonable speed. As to the second specification of negligence (No. 3 above), there is no legal duty imposed upon the defendant to exercise "the highest degree of care" that is not qualified by the condition that the exercise of such care must be considered in connection with the practical operation of the cab. There are, of necessity, some dangers against which a common carrier of passengers cannot guard if he is to move his vehicle in the service of his passengers. Nor is there any evidence in the partial bill of exceptions to show that, under the circumstances,

the stopping or swerving of the cab would or could have avoided the collision after he moved into the intersection. This claim of error is not well taken.

Assignment of error No. 9 is based upon the introduction of the evidence of the personnel director of a former employer of the plaintiff, putting in evidence his employment record and the claim that the personnel director was permitted to interpret medical reports found on such records.

The record does not support this claim. The direct examination of Mr. Burke (the witness named in this assignment of error) shows only that he identified plaintiff's employer's (The Lamson & Sessions Company) employment records. The cross-examination of the witnesses by plaintiff has been omitted from the bill of exceptions. On his direct examination, the witness was asked to and did read the information on the exhibits which were identified as company records of plaintiff's employment. An examination of the exhibits shows them to be almost illegible, and their reading was not to interpret them but to understand what was written. In any event, this evidence did not deal with or involve the claims of negligence (that is the failure to use the highest degree of care consistent with the practical operation of the taxicab), and, therefore, when the verdict was returned for the defendant, such evidence could not prejudice the rights of the plaintiff.

The final error set out is concerned with the claim that defendant's counsel referred to insurance in his final argument in relation to the party dismissed for want of service at the beginning of the trial and the ''bonafides'' of appellant's counsel in calling Askew (the defendant dismissed) as a rebuttal witness.

The bill of exceptions contains only a part of the cross-examination of Askew and only a part of the final argument of counsel for the defendant, wherein the subject of Askew's insurance (without objection on the part of the plaintiff) was called to the attention of the jury as a result, in part at least, of his testimony on cross-examination which is in the bill of exceptions. It is to be noticed that the concluding arguments of plaintiff's counsel are missing from the bill. Because of the fact that the bill of exceptions is not sufficiently complete to demonstrate this claim of error, such claim is overruled.

412

It is argued that, even though this court should find that no single error assigned is sufficiently prejudicial to justify a reversal of the judgment, yet the accumulative effect of all the errors set out, when taken together, requires this court to hold that the plaintiff was not afforded a fair trial and that, for that reason, the judgment should be reversed and a new trial granted. This claim is without any legal foundation whatever. Any error shown upon the record must stand or fall on its own merits and is not aided by the accumulative effect of other claims of error. The court has recently passed on this question in the case of *Richlin* v. *Gooding Amusement Co., Inc.,* 113 Ohio App., 99.

For the foregoing reasons the entry of January 25, 1962, is vacated and the following substituted therefor. Judgment affirmed. The motion for rehearing is overruled.

*Judgment accordingly.*

KOVACHY, P. J., and HURD, J., concur.