## 46273. McALLISTER v. THE STATE.
### (375 SE2d 36)

MARSHALL, Chief Justice.

Marvin Eugene McAllister appeals his conviction of the malice murder of Sandra Elaine Weatherbee, for which he was sentenced to life imprisonment.[1] We affirm.

There was evidence which authorized the following findings. McAllister and his victim were drug users and drug sellers who lived

---

[1] The crime was committed on March 5, 1988. McAllister was convicted and sentenced on June 8, 1988. A notice of appeal was filed on June 14, 1988. The transcript of evidence was filed on September 29, 1988. The case was docketed in this Court on October 11, 1988, and submitted for decision on November 25, 1988.

together for approximately three weeks in the residence of their drug suppliers. She told him that she wanted to discontinue their relationship and just be friends. An argument ensued, during which he cursed her. He later confided to a drug customer that he was going to kill his "old lady." During a trip to buy drugs, he shot her with a .25 calibre handgun — once through the top of her head, once through her left cheek, and once through her left ear. Medical testimony indicated that she died from the wound to the left ear. Ballistics testimony indicated that she had been killed by a .25 caliber handgun under circumstances negating suicide. Those circumstances included the estimated distance from the muzzle to the head wounds, and the presence of gunshot residue on his hands but not hers. Ballistics testimony indicated that a bullet removed from her body was consistent with having been fired from McAllister's handgun. When a sheriff's deputy on patrol stopped to investigate the parked vehicle, McAllister ran to the patrol car and told the deputy that, when he parked the vehicle, Weatherbee shot herself in the head twice. McAllister confided to a friend, "I had to do it . . . ."

1. The appellant first contends that the state failed to establish a sufficient chain of custody with respect to a gunshot-residue test performed on him. He claims that no evidence was presented as to: how the GBI agent marked the gunshot-residue swabs taken from the hands of McAllister and the victim; what was done to preserve the swabs from contamination; the date on which the swabs were sent from the Augusta laboratory and received by the Atlanta laboratory; the manner in which they were identified, preserved and protected by the Augusta laboratory; and their condition. Accordingly, there is no assurance: as to the identity of the wipings; that they were not interchanged or commingled with each other; and that they were not altered or adulterated at some point in the handling process.

The jury heard testimony as follows. The GBI agent used two separate gunshot-residue kits, one for McAllister and one for the victim. He followed the instructions in each kit. The wipings were taken from McAllister and the victim at different times and places. Each kit was separately boxed and sealed, and all the swabs were sealed in vials. The agent was satisfied that the wipings were not contaminated.

In the case of blood samples, we have held that, when a blood sample is routinely handled and nothing in the record raises a suspicion that the blood tested was other than that taken from the defendant, the evidence of tests on such blood is admissible, and that the circumstances of each case need only establish reasonable assurance of the identity of the sample. *Cunningham v. State*, 255 Ga. 35 (5) (334 SE2d 656) (1985) and cit. The trial court did not abuse its discretion in finding that a proper chain of custody had been established to admit the test results.

2. The appellant next enumerates as error the trial court's denial of his motion for continuance on being apprised of the alleged unexpected presence of two witnesses for the state. As to witness Barbara Cook, the appellant concedes that her name and address were on the witness list provided to him, but that his counsel was unable to locate her. Rule 30.3 of the Uniform Rules for the Superior Courts provides in part, "Upon request of defense counsel, the district attorney shall furnish to defense counsel as an officer of the court, in confidence, the addresses and telephone numbers of the state's witnesses *to the extent such are within the knowledge of the district attorney*." (Emphasis supplied.) We find no error.

As to witness Lorraine Krebs, the defense was given her name as Lorraine Gibbs (a/k/a Rainey). The appellant concedes that he was aware of the existence of "Rainey," with whom he had spent the evening prior to the murder and whom he had contacted after his incarceration. Under the circumstances, any error in the last name of this witness was harmless. See *Stansifer v. State*, 166 Ga. App. 785 (1) (305 SE2d 481) (1983). Moreover, the trial court gave the defense time to interview both witnesses.

3. The appellant contends that the trial court should not have allowed an expert in crime-scene reconstruction to offer, as an expert, conclusions that an ordinary juror could have drawn as to the ultimate issues of fact normally reserved for the jury's determination. See *Williams v. State*, 254 Ga. 508 (1) (330 SE2d 353) (1985) and cits. Even assuming that the defense raised objections sufficient to raise this issue for review, the conclusions as to details of how the murder was committed — such as that the victim was shot while standing upright and that the victim's clothing was removed while the victim was lying on the ground — could not have been reached by the jury without professional skill and knowledge such as that acquired by the expert witness. Moreover, the expert testimony was as consistent with the defense theory that the victim was shot by a mysterious stranger as with the prosecution's theory. This enumeration is without merit.

4. The appellant contends that, through testimony in the record and gestures not reflected in the record, the state's witness Cook indicated that McAllister knew where to get marijuana, thereby impermissibly placing his character in evidence. However, the defense failed to request a limiting instruction or other sanction, then elicited similar testimony during cross-examination of Cook. Moreover, McAllister himself testified about his own drug use. This enumeration is without merit.

5. The appellant next contends that his cross-examination by the prosecutor was impermissibly argumentative, in that it derided him for crying on the witness stand; stated that he was trying to save his "miserable hide"; and was filled with expressions of personal opinions

allegedly not based on the evidence, and with "theatrical asides."

"The purpose of cross-examination is to provide a searching test of the intelligence, memory, accuracy, and veracity of the witnesses, and it is better for cross-examination to be too free than too much restricted." *Ledford v. State*, 89 Ga. App. 683, 685 (1) (80 SE2d 828) (1954) and cit. Moreover, the defense never moved for a mistrial; the defense twice requested admonitions, and the trial court complied. The court was not obligated to grant relief not requested.

6. The appellant contends that hearsay testimony on the issue of whether or not the victim made a telephone call should have been excluded, because the state did not lay a foundation for admission of the telephone company's records as business records. However, the state contends that the hearsay evidence was admissible in rebuttal to impeach McAllister's testimony about the telephone call, citing *Seaboard C.L.R. Co. v. Smalley*, 127 Ga. App. 652, 654 (1) (194 SE2d 612) (1972) and cits.[2] While we do not agree that the principle in the cases cited by the state, when applied to the facts of this case, would authorize the result sought by the state, we find that the error in admitting the telephone evidence, if any, was harmless in view of the strong evidence of defendant's guilt.

7. We find that the evidence here is sufficient to meet the requirements of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Smith and Bell, JJ., who concur in the judgment only as to Division 3.*

DECIDED JANUARY 11, 1989.

*Garrett & Johnson, Peter D. Johnson*, for appellant.

*Sam B. Sibley, Jr., District Attorney, Danny L. Durham, Assistant District Attorney, Michael J. Bowers, Attorney General, Leo-*

---

[2] Relying on *Seaboard C.L.R. Co. v. Smalley*, supra, the state contends that this hearsay evidence may be used in rebuttal to impeach the defendant's testimony. In that case, and in *McDaniel v. Gangarosa*, 126 Ga. App. 666 (191 SE2d 578) (1972), relied on in *Smalley*, the courts rejected a contention that evidence contained in business records was hearsay and should not have been admitted because the business records in question were not properly authenticated. The court in *Smalley* goes on to say in dicta that "[h]earsay evidence is admissible for impeachment, though inadmissible for other purposes," citing *McKinney v. Pitts*, 109 Ga. App. 866 (3) (137 SE2d 571) (1964); *Stubbs v. Daughtry*, 115 Ga. App. 22, 24 (2) (153 SE2d 633) (1967); and *Sheffield v. State*, 124 Ga. App. 295 (2) (183 SE2d 525) (1971). However, in *McKinney* and *Stubbs*, prior inconsistent statements were the hearsay evidence used to impeach the witnesses. The facts in *Sheffield* do not make clear the basis on which the impeachment evidence was allowed. While a prior inconsistent statement made by a witness may be used for impeachment, there is no general rule of law which allows all hearsay evidence to be used for impeachment.