S90A0225. MILLER v. THE STATE.

(391 SE2d 642)

BELL, Justice.

Kelly Miller appeals his conviction for the felony murder and armed robbery of Robert Goodwin.[1] Miller contends, inter alia, that the evidence is insufficient to support the verdict; that the trial court failed to conduct a fair and impartial trial; that the trial court erred by admitting inadmissible evidence and by limiting the scope of Miller's cross-examination; and that the state improperly placed his character into evidence on two occasions. We affirm.

On April 2, 1988, Robert Goodwin registered at the OMNI Hotel. He was in Atlanta on vacation. On April 3, 1988, Goodwin, who was wearing a lot of jewelry, entered the American Cafe, a restaurant lo-

---

[1] The crime occurred on April 3, 1988. On March 14, 1989, Miller was indicted for malice murder, felony murder and armed robbery. Miller was tried on May 22-26, 1989, and was found guilty on May 26, 1989. Miller filed a motion for new trial on June 21, 1989. The court reporter certified the transcript on September 14, 1989. The trial court denied Miller's motion on October 11, 1989. Miller filed a notice of appeal on October 16, 1989. The appeal was docketed in this Court on November 17, 1989, and was orally argued on January 17, 1990.

cated in the OMNI Hotel. He sat and ate dinner with Miller. Terrance Brown, the nine-year-old son of Karen Brown, Miller's fiancee, was also present at Miller's table. The two men subsequently left the restaurant at separate times. However, Miller returned to the restaurant several times during the evening. Miller made a final visit to the American Cafe as it was about to close at 11:00 p.m. Miller had a garment bag folded over his arm, and asked the bartender whether there were any cameras in the hallways and exits. He also asked about alternatives to using the hotel elevator.

Although Miller was then living with Karen and Terrance Brown in Atlanta, Miller told several people at the hotel that Miller was visiting his son — Terrance Brown — from out of town.

When Miller left the hotel, he took Terrance Brown to the apartment they shared with Karen Brown. Karen Brown arrived at the apartment around midnight on April 3, 1989. Miller was not at the apartment, but he returned a short while after Karen Brown's arrival.

During the night Miller vacated the apartment and left Karen Brown a note stating he had moved to his sister's apartment. On the morning of April 4, 1988, Karen Brown went to Miller's sister's apartment. Miller gave her several items of jewelry and instructed her to pawn the jewelry at two different pawn shops. Karen Brown followed Miller's instructions. The jewelry turned out to be jewelry stolen from Goodwin.

On April 4 a hotel maid found Goodwin's body in his room. Goodwin had suffered multiple stab wounds to his chest and back, and had died as a result. Fingerprints taken at the crime scene were identified as belonging to Miller. One of Miller's shirts was found in Goodwin's room. The police also found Miller's keys inside the pocket of a pair of Goodwin's pants. The pants were stained with Goodwin's blood. Moreover, through saliva testing, it was determined that some cigarette butts found in Goodwin's room had been smoked by Miller.

Following Miller's arrest, Miller gave a statement to the police. The statement was introduced at trial after a *Jackson-Denno* hearing. In his statement, Miller admitted meeting Goodwin at the American Cafe. He also stated he and Terrance Brown went to Goodwin's room so that Terrance Brown could use the bathroom. He added that he and Terrance left Goodwin's room after about 15 minutes. He denied killing Goodwin. Miller did not testify at trial.

1. In his first enumeration of error Miller argues that the evidence was insufficient to support his conviction. We disagree. Reviewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Miller guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. In his fourth enumeration of error Miller contends that the

trial court abused its discretion by allowing J. J. James, the investigating officer, to testify to a statement made to her by an individual who worked at a nightclub and at the American Cafe at the OMNI. This individual had seen Miller with Goodwin at the American Cafe and later saw Miller at the nightclub. The individual obtained a name and address for Miller. Officer James testified that the individual gave her the name of Shawn Miller and the address. When Officer James went to the address, the officer discovered that Miller's sister lived there. Officer James testified that Miller's sister said she did not know a Shawn Miller, but did have a brother named Kelly Miller.

Miller objected to Officer James' testimony, but the court admitted it under OCGA § 24-3-2 to explain the conduct of the officer. We conclude the trial court erred, as the conduct of Officer James was not relevant to any issue in the trial. *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982). However, in view of the strength of the evidence against Miller, we conclude that the error was harmless. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

3. In his fifth enumeration of error Miller contends that the trial court erred by allowing Officer James to identify a hotel-room checklist prepared by an OMNI employee. Miller contends that the officer's identification of the document amounted to inadmissible hearsay testimony.

Even assuming that the admission of the testimony was error, the error was harmless, as the employee who prepared the document testified later in the trial regarding the identity and contents of the document. *Faircloth v. State*, 253 Ga. 67, 69 (3) (316 SE2d 457) (1984); *Glass v. State*, 235 Ga. 17, 19 (2) (218 SE2d 776) (1975).

4. In his sixth enumeration of error Miller contends that the trial court erred by allowing Officer James to testify, over Miller's hearsay objection, that three OMNI employees identified a photograph of Miller as the man they saw with Robert Goodwin. The state argues that this testimony was admissible under § 24-3-2 to explain the officer's conduct. We pretermit a decision whether this testimony was admissible under § 24-3-2, but see *Momon*, supra, 249 Ga., as Officer James' testimony was admissible as prior consistent statements of the three Omni employees, all of whom identified Miller at trial as the man they saw with Goodwin and also testified to their photo-identification of Miller. *Jarrells v. State*, 258 Ga. 833, 837 (14) (375 SE2d 842) (1989); *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985).

5. In his seventh enumeration of error Miller contends that the trial court erred by admitting his statement into evidence. At the *Jackson-Denno* hearing the investigating officer testified she read Miller his *Miranda* warnings. She asked him if he understood his rights, and Miller responded that he did. She then asked Miller to sign a form entitled, "Waiver of Counsel by Defendant in Custody."

The form provided that "[a]fter having my constitutional rights explained to me, I freely and voluntarily waive my right to an attorney." Before signing, Miller asked if by signing the form he waived his right to an attorney. The officer responded "no" to Miller's question. Miller signed the form and then gave his statement to the police.

Miller contends that his question to the officer indicated that he did not understand the nature of his right to consult with an attorney, and that the trial court, for this reason, should not have admitted his statement into evidence.

We need not address whether the trial court erred in admitting the statement, because, even assuming the court erred, the error was harmless. Miller's statement merely provided some evidence of Miller's presence in Goodwin's room, whereas the state presented an overwhelming amount of other evidence that placed Miller in the room near the time of the murder. The cumulative nature of Miller's statement renders any error in its admission harmless. *McLendon v. State*, 259 Ga. 778 (387 SE2d 133) (1990); *Foster v. State*, 258 Ga. 736, 742 (8) (b) (374 SE2d 188) (1988).

6. In his eighth enumeration of error Miller contends the trial court erred in refusing to permit him to question Officer James concerning a statement made to the officer by a Ms. Seay. The hearsay statement concerned Goodwin's social contacts during a visit to Atlanta about one year before his death. At trial Miller alleged the hearsay statement was admissible for the purpose of impeaching the testimony of Officer James. The court sustained the state's objection that the evidence was irrelevant.

On appeal, Miller relies on the following language from *Seaboard C. L. R. Co. v. Smalley*, 127 Ga. App. 652, 654 (1) (194 SE2d 612) (1972), to argue that hearsay evidence is always admissible for the purpose of impeachment: "Hearsay evidence is admissible for impeachment, though inadmissible for other purposes." However, in *McAllister v. State*, 258 Ga. 795, 798 (6) (fn. 2) (375 SE2d 36) (1989), we limited the foregoing language in *Smalley* by stating: "While a prior inconsistent statement made by a witness may be used for impeachment, there is no general rule of law which allows all hearsay evidence to be used for impeachment." Id. Thus, the hearsay evidence in question was not admissible merely because it was offered for impeachment purposes. Moreover, we find no exception to the hearsay rule that would have permitted this testimony.

Finally, where a trial court determines that proposed cross-examination would induce irrelevant testimony, the court does not abuse its discretion in denying such questioning. *Lumpkin v. State*, 255 Ga. 363, 365 (5) (338 SE2d 431) (1986). Here, we find that the trial court did not abuse its discretion by disallowing testimony regarding statements made about a visit that occurred one year before Goodwin's

death.

For the foregoing reasons, we find Miller's eighth enumeration of error to be without merit.

7. In his ninth enumeration of error Miller contends that the trial court erred in excluding Dr. Keith Norton's testimony regarding the victim's blood-alcohol level. However, contrary to Miller's assertions, we conclude that the testimony was not admissible under either the business-records exception, see *Suarez v. Suarez*, 257 Ga. 102, 103-104 (2) (355 SE2d 649) (1987), or the medical-diagnosis exception, see *Dunn v. McIntyre*, 146 Ga. App. 362, 363 (2) (246 SE2d 398) (1978), to the hearsay rule.

8. In his tenth enumeration of error Miller contends that the trial court erred in restricting his cross-examination of two OMNI security officers concerning three men. Two of the three were "suspicious" men that one of the security officers had seen on the evening of April 2. The third man was an individual who had a master key to the OMNI Hotel and who had stolen several televisions at about the time of Goodwin's death. We conclude that the trial court did not abuse its discretion in controlling the scope of cross-examination. See *Johnson v. State*, 258 Ga. 504, 505-506 (371 SE2d 651) (1988); *Lumpkin v. State*, supra, 255 Ga. at 365. Moreover, regarding the individual who had keys to rooms at the OMNI Hotel, it appears that the questions Miller had for the witness were asked by Miller and answered before the state objected.

9. In his eleventh enumeration of error Miller contends that the trial court erred in prohibiting Miller from questioning a police officer concerning some statements made by the police officer on cross-examination by the state. We find no error.

Miller called the officer in question as his witness. During cross-examination by the state, the officer testified that, when he was contacted by Miller's attorney about testifying, Miller's attorney told him that he was with the district attorney's office. Miller's attorney did not object to this line of questioning. After the state's questioning, Miller's attorney asked the officer several questions about the matter. At that time the court expressed concerns about the relevancy of the issue, and, after argument, ruled that no more questions could be asked on the issue. The court also gave curative instructions to the jury. We find that the trial court did not abuse its discretion in restricting questioning of the officer. See *Lumpkin v. State*, supra, 255 Ga. at 365.

10. In his twelfth enumeration of error, Miller contends that the trial court abused its discretion by allowing the state to ask leading questions of several witnesses on direct examination. However, we cannot conclude that the trial court abused its broad discretion by not interfering with the state's questioning of these witnesses. See

OCGA § 24-9-63.

11. In his thirteenth and fourteenth enumerations of error Miller contends that the state improperly placed his character in evidence on two occasions and that the trial court erred in denying the motions for mistrial that he made on each occasion. We find no error.

Miller first contends that the state improperly placed his character in evidence when Karen Brown testified that, after Miller "had been arrested and been in jail for awhile," she learned that the jewelry Miller gave to her was stolen. This Court has held that a witness' reference to an accused being arrested and placed in jail does not improperly place the accused's character into evidence. See *Matthews v. State*, 258 Ga. 144, 145 (2) (366 SE2d 280) (1988); *Williams v. State*, 242 Ga. 757, 758 (2) (251 SE2d 254) (1978).

Miller further contends that Officer James' reference to checking "a record on Kelly Miller" improperly placed his character into evidence. However, this Court has held that a reference by a police officer to the defendant's record does not place the defendant's character into evidence. *Johnson v. State*, 256 Ga. 604, 605 (2) (351 SE2d 623) (1987).

For the forgoing reasons, we find that the state did not improperly place Miller's character in evidence and that the trial court did not err in denying Miller's motions for mistrial.

12. In his fifteenth enumeration of error Miller contends that the trial court erred in admitting a crime-scene diagram into evidence. We find no error. *Ruff v. State*, 150 Ga. App. 238, 239 (2) (257 SE2d 203) (1979).

13. In his sixteenth enumeration of error Miller contends that the trial court erred by instructing the jury that if they believed beyond a reasonable doubt that Miller committed the crime, the jury's verdict "would be . . . guilty." Miller contends this instruction improperly imposed an affirmative duty upon the jury to find Miller guilty. We find no error. As we stated in *Noggle v. State*, 256 Ga. 383, 385 (2) (349 SE2d 175) (1986):

> [A]lthough . . . "the jury does possess a de facto power of nullification, i.e., a power to acquit the defendant regardless of the strength of the evidence against him . . . it nonetheless is true that if the evidence proves the defendant guilty beyond a reasonable doubt it is the jury's duty to convict. [Cit.]" [Cit.]

Thus, Miller's sixteenth enumeration of error is without merit.

14. In his second and third enumerations of error, Miller argues that, for the reasons set out in his fourth through sixteenth enumerations of error, the trial court failed to conduct a fair and impartial

trial. We find no merit to these enumerations.

*Judgment affirmed. All the Justices concur, except Smith, P. J., and Weltner, J., who dissent.*

SMITH, Presiding Justice, dissenting.

I dissent because of the harmless error findings. It is difficult for me to see where harmless error findings are harmless to an appellant. We have been gravitating more and more to harmless error. By stacking harmless error upon harmless error to uphold convictions we are shifting the scales of justice in favor of the state and against the appellant. This Court in *Hess Oil &c. Corp. v. Nash*, 226 Ga. 706, 709 (177 SE2d 70) (1970), stated:

> The duty of the appellate court is to correct errors alleged to have been made in the trial court and not to manufacture them. As was said in Nicholas v. Yellow Cab Co., 180 NE2d 279, 286, "Any error shown upon the record must stand or fall on its own merits and is not aided by the accumulative effect of other claims of error."

I believe that the state has a duty to provide each criminal defendant with a fair trial. One begins to wonder just how fair a trial is if harmless error begins to stack on harmless error. Perhaps it is time to reconsider the use of this rule. I realize that there are exceptions; this is not one of them.

I am authorized to state that Justice Weltner joins in this dissent.

DECIDED MAY 24, 1990.

*Leigh B. Finlayson*, for appellant.

*Lewis R. Slaton, District Attorney, Richard E. Hicks, Assistant District Attorney, Michael J. Bowers, Attorney General, Richard C. Litwin*, for appellee.