## S09A0155. TIMMRECK v. THE STATE.
### (673 SE2d 198)

CARLEY, Justice.

A jury found Christopher Franklin Timmreck guilty of the malice murder of Brian Anderson. The trial court entered judgment of conviction on the guilty verdict and sentenced Timmreck to life imprisonment. A motion for new trial was denied, and Timmreck appeals.[*]

1. Construed most strongly in support of the verdict, the evidence shows that a police officer observed Timmreck walking on a highway and shined a spotlight on him. Timmreck immediately ran into a pile of brush and was ordered to come out. He was covered in blood and had a deep cut in his wrist. Timmreck told the officer that he had been attacked by six to eight men and had used his knife to defend himself. He gave the knife to the officer and, after being treated for his wound at the scene, Timmreck was allowed to proceed to his hotel.

---

[*] The homicide occurred on October 6, 2004, and the grand jury returned an indictment on December 15, 2004. The jury found Timmreck guilty on February 27, 2006, and the trial court sentenced him on February 28, 2006. The motion for new trial was filed on March 21, 2006, amended on March 27, 2006, and denied on April 7, 2008. Timmreck filed the notice of appeal on April 15, 2008. The case was docketed in this Court on October 2, 2008, and submitted for decision on the briefs.

The victim was subsequently found dead on his neighbor's front porch. He was wearing only underwear and had been stabbed 12 times, including six times in his back. A trail of blood led back to his home where the door had been kicked in and where blood was discovered in many locations in the house. Another trail of blood led away from the house to the same highway where Timmreck was walking. Timmreck formerly lived across the street from the victim. Blood from the knife which Timmreck gave to the police officer was later matched to that of the victim.

After discovery of the victim, Detective Marcus Head talked with Timmreck at the hotel. Timmreck eventually admitted that he had been at the victim's home, that the two argued over Timmreck's belongings which the victim had stored for him, that the victim slammed the door, and that Timmreck kicked the door in. Timmreck claimed that he was then confronted by the victim with a knife and that he took the knife from the victim and acted in self-defense. "[W]itness credibility is for [the] jury to decide, as is the question of justification; therefore, [the] jury is free to reject [the] claim that [the] defendant acted in self-defense." *Webb v. State*, 284 Ga. 122, 123 (1) (663 SE2d 690) (2008).

The evidence was sufficient to enable a rational trier of fact to find Timmreck guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lopez v. State*, 274 Ga. 663, 664 (1) (558 SE2d 698) (2002).

2. Timmreck contends that the trial court erred in denying a motion to suppress the statements which he made to Detective Head.

The relevant evidence on this issue consisted of Detective Head's uncontradicted testimony and an audiotape which he made of the interview. That evidence shows that Head and an investigator went to Timmreck's hotel and, when Timmreck opened his hotel room door, his arm was still bleeding. Head suggested that he obtain further medical treatment, and they walked downstairs to the detective's car. Timmreck was allowed to smoke and again said that he was attacked by several men. Head put a new sterile dressing on Timmreck's wound. Timmreck used his cell phone several times, trying to call a friend who was coming to assist him. Head told Timmreck that he did not believe his story. Head began to reveal some of the evidence from the crime scene and said that it was not getting any better for Timmreck. At Timmreck's request, they returned to the hotel room, where he asserted in some detail that he was defending himself against the victim's attack. Head then drove Timmreck to the hospital for further treatment, without handcuffs, in an unmarked car without equipment which would prevent him from exiting the back of the car. At the hospital, when Timmreck asked for a ride back to his hotel, he was placed under arrest and

informed of his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Timmreck then urged Head to ask him more questions about the incident.

Timmreck argues that he was not given the *Miranda* warnings prior to most of his pre-trial statements even though he was in custody at the time.

> "*Miranda* warnings are required when a person 'is (1) formally arrested or (2) restrained to the degree associated with a formal arrest.' (Cit.) Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. (Cit.)" [Cit.]

*Jennings v. State*, 282 Ga. 679, 680 (3) (653 SE2d 17) (2007). The evidence shows that Timmreck was initially identified by police as the victim and, until receiving the *Miranda* warnings, he "was not under formal arrest . . . , [he] moved about [his hotel room and the parking lot] without restriction, [and he] made and received telephone calls without restraint . . . ." *Quedens v. State*, 280 Ga. 355, 358-359 (2) (629 SE2d 197) (2006). Nor was Timmreck under any restriction in the detective's car.

Under *Stansbury v. California*, 511 U. S. 318, 323-324 (114 SC 1526, 128 LE2d 293) (1994), the fact that Timmreck "was the focus of the investigation did not require the law enforcement personnel to give *Miranda* warnings. [Cit.]" *Quedens v. State*, supra at 359 (2). Although Timmreck was free to leave at first, Head testified that he would not have let Timmreck leave later in the interview. Again, however, the relevant inquiry is whether a reasonable person in Timmreck's situation would perceive that he was in custody.

> "As long as a person is not in custody, it is irrelevant to the *Miranda* analysis that investigators '(1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge (him) with an offense.' (Cit.)" [Cit.]

*Jennings v. State*, supra at 681 (3).

We conclude that the evidence supports the finding that, prior to being placed under formal arrest, "a reasonable person in [Timmreck's] place would not have felt so restrained as to equate to a formal arrest. [Cit.]" *Quedens v. State*, supra. Furthermore, because Timmreck's statements prior to his *Miranda* warnings were properly admitted, we need not consider whether those statements which were preceded by *Miranda* warnings are inadmissible under *State v. Pye*, 282 Ga. 796, 799-800 (653 SE2d 450) (2007). Compare *Reaves v. State*, 284 Ga. 181, 182 (1) (664 SE2d 211) (2008).

Moreover, Timmreck's "testimony at trial was substantially the same as the statement[s] which he made to [Head]." *Donaldson v. State*, 249 Ga. 186, 190 (5) (289 SE2d 242) (1982). See also *Creson v. State*, 218 Ga. App. 184, 185 (1) (460 SE2d 83) (1995). "[B]ecause [Timmreck's] testimony at trial was consistent with [those] statement[s], 'any error in admitting the statement[s] would have to be deemed harmless.' [Cit.]" *Webb v. State*, supra at 125 (3). See also *Larry v. State*, 266 Ga. 284, 286 (2) (a) (466 SE2d 850) (1996).

3. After being called as a witness by the defense, a forensic toxicologist testified that the victim's blood tested positive for a metabolite of cocaine and that paranoia and aggressiveness are side effects of cocaine use. Defense counsel subsequently requested that the toxicologist's written lab report be admitted into evidence, and the trial court postponed a ruling on that request. When the trial court later returned to the issue, Timmreck's attorney withdrew the request. Timmreck urges that this action constituted ineffective assistance of counsel.

Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), "[i]n order to prevail on a claim of ineffective assistance of trial counsel, the defendant must show that counsel's performance was deficient and also that the deficiency prejudiced his defense . . . . [Cits.]" *Brewer v. State*, 280 Ga. 18, 20 (3) (622 SE2d 348) (2005). " 'On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo. (Cit.)' [Cit.]" *King v. State*, 282 Ga. 505, 506 (2) (651 SE2d 711) (2007).

Timmreck accurately concedes "that the results of the report were read into the record." The toxicologist's testimony was more extensive than her report and was consistent with other testimony. The assertion that producing a copy of the toxicologist's report would have altered "the outcome of the trial when testimony concerning the [report] did not have that effect is mere speculation. '(S)uch speculation raises no more than a mere possibility, a showing which is insufficient in these circumstances.' [Cit.]" *Lemming v. State*, 272 Ga. App. 122, 131 (2) (612 SE2d 495) (2005). The toxicologist's report "would have been cumulative of her testimony at trial. [Timmreck] accordingly cannot establish how counsel's performance, even if deficient, prejudiced his defense so as to support a claim of ineffective assistance of counsel. [Cits.]" *Gibson v. State*, 277 Ga. 486, 488 (2) (591 SE2d 800) (2004). See also *Brewer v. State*, supra at 20 (3) (a); *Kelly v. State*, 255 Ga. App. 813, 816 (5) (567 SE2d 36) (2002).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 9, 2009.

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney, Benjamin M. First, Wesley C. Ross, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.