**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 25, 2014**

# In the Court of Appeals of Georgia

A14A1011. SMITH v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Keith Antonio Smith was convicted of aggravated assault (OCGA § 16-5-21), aggravated battery (OCGA § 16-5-24), and cruelty to children in the third degree (OCGA § 16-5-70 (d)). He challenges the sufficiency of the evidence supporting the aggravated battery conviction, but the evidence authorized the jury to find he had committed that offense. He also challenges the effectiveness of his trial counsel in connection with his decision not to testify at trial, but he has not met his burden of showing that he received ineffective assistance. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

Smith argues that the evidence was insufficient to support his conviction for aggravated battery, an offense committed when a person "maliciously causes bodily

harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original).

So viewed, the evidence showed that on June 13, 2011, Smith was living in an apartment with, among others, his girlfriend, their four-year-old daughter, and his girlfriend's mother, Carla Hunter. That night, Smith and Hunter began arguing about whether Hunter should iron clothes in a bedroom where the child was sleeping. At some point during the argument, Smith took the child into another room. As the argument continued, Smith retreated to his bedroom and retrieved and loaded a gun. His girlfriend screamed for Hunter to leave the house and tried to restrain Smith. Smith broke away, walked quickly to the room in which Hunter was ironing, and fired the gun several times into the room, striking Hunter in the arm and shoulder. Hunter's injuries made it difficult for her to write and for several months she required

2

assistance with personal care tasks such as cooking and bathing. She underwent physical therapy to regain feeling in her arm.

The state charged Smith with committing aggravated battery by rendering her arm useless. Smith argues that the evidence showed only that Hunter's use of her arm was temporarily impaired, not that the arm was rendered useless. But "even the temporary reduced use of a bodily member may be sufficient to render it useless under the aggravated battery statute." *Biggins v. State*, 299 Ga. App. 554, 555 (1) (683 SE2d 96) (2009) (citations and punctuation omitted). The evidence that, for several months after the shooting, Hunter struggled to write and to care for herself, had to rely on another person for help in tasks such as cooking and bathing, and had to undergo physical therapy, authorized Smith's conviction for aggravated battery. See *Wall v. State*, 283 Ga. App. 560, 561 (1) (642 SE2d 195) (2007) (finding evidence that victim had suffered loss of use of elbow, supporting defendant's conviction for aggravated battery, where victim's elbow had been broken, victim had undergone physical therapy to regain strength in her arm, and victim had spent three months in safe house because she could not care for herself).

2. *Ineffective assistance of counsel*.

Smith did not testify at trial, and he argues that his trial counsel was ineffective in advising him on this decision. To prevail, he must show

that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. If an appellant fails to meet his or her burden of proving either prong of [this] test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

*Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010) (citations and punctuation omitted).

The record shows that, after the state's case-in-chief, the trial court engaged in a colloquy with Smith about his decision not to testify and found that Smith had "discussed his Constitutional rights with his lawyer and that it is a free and voluntary decision on his part to not take the stand and offer testimony." Smith does not challenge the effectiveness of his trial counsel up to that point. Instead, he argues that his trial counsel should have revisited the issue with him at a later point – when the trial court decided not to give Smith's requested jury charge on the affirmative

4

defense of accident. Although trial counsel had elicited some evidence during the state's case-in-chief that the gun had discharged accidentally, the trial court held that there was not enough evidence to support the accident charge, and Smith has not challenged this ruling on appeal.

Smith argues that accident was his sole defense and that his testimony would have supported the giving of the charge. Accordingly, he argues that his trial counsel was deficient in two respects: by failing to revisit the issue of testifying with him after the jury charge ruling and by failing to advise him to testify. As detailed below, Smith has not shown that he was prejudiced by trial counsel's failure to revisit the issue, and he has not shown that trial counsel was deficient in concluding, despite the jury charge ruling, that it would not be in Smith's best interest to testify.

(a) *Failure to revisit the issue of testifying.*

"Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *Thornton v. State*, 292 Ga. 796, 798 (2) (a) (741 SE2d 641) (2013) (citation omitted). Through the colloquy with Smith, the trial court determined that he had made an informed and voluntary decision not to testify. See generally *Jones v. State*, 290 Ga. 576, 579 (3) (722 SE2d 853)

5

(2012) (rejecting claim of ineffective assistance based on allegedly deficient advice about defendant's testimony, where trial court had informed defendant of his right to testify and his right to decide whether he would testify). Assuming without deciding that trial counsel should have revisited this issue with Smith to discuss the implications of the trial court's subsequent jury charge ruling, Smith has not shown that this alleged deficiency prejudiced him. Nothing in the record suggests that trial counsel would have advised Smith differently had she revisited the issue. To the contrary, trial counsel testified on direct examination at the hearing on the motion for new trial that, even after the jury charge ruling, she did not think it was in Smith's best interest to testify; and Smith's new trial counsel did not follow up. And when asked at the hearing on the motion for new trial whether he would have made a different decision about testifying had he known the implications of the trial court's ruling on the jury charge, Smith indicated that he would have continued to follow his attorney's advice:

> Q. Had you known that the jury, that because you didn't testify, the jury wouldn't even be able to consider accident, had you known that, what would – what would have been your decision about testifying or not testifying?

6

A. No, I was unaware of how it all works because my lawyer told me not to testify because there's no need for it.

Q. Okay. You were following her advice?

A. Right. And me, not being a lawyer, never studied any law book or anything, I listened.

Accordingly, Smith has not shown that he would have chosen to testify, contrary to his trial counsel's advice, if trial counsel had revisited the issue. Consequently, he has not met his burden of showing a reasonable likelihood that, but for trial counsel's failure to revisit the issue, the outcome of the trial would have been different. See *Bridges*, 286 Ga. at 537 (1).

(b) *Determination that testifying was not in Smith's best interest.*

Smith argues that trial counsel was deficient in believing that it would not be in Smith's best interest to testify. He argues that trial counsel's opinion rested on a misapprehension of law regarding the potential negative impact of Smith's testimony on his case. We disagree.

At the hearing on the motion for new trial, trial counsel testified that, despite the trial court's jury charge ruling, she did not believe Smith should testify based on information he had previously given trial counsel, which was that his "initial firing

7

of the weapon was not an accident." Smith had told trial counsel that he first fired two or three "warning" shots into the room occupied by Hunter but did not intend to strike her, that his girlfriend began struggling with him for the gun, and that the gun then accidentally discharged several more shots. Although at the hearing Smith stated that he would have testified to a different version of events, in which all of the shots fired were accidental, he conceded that he did not share that version of events with his trial counsel. From the version of events known by trial counsel, she believed that Smith's actions demonstrated aggravated assault, one of the offenses with which he was charged.

Smith argues that trial counsel was wrong in believing that his act of firing "warning" shots constituted aggravated assault under the method of aggravated assault upon which the trial court charged the jury (aggravated assault by attempting to violently injure another under OCGA § 16-5-20 (a) (1)). Nevertheless, it was reasonable for trial counsel to believe that Smith's testimony would put him at risk of conviction for aggravated assault. Smith told trial counsel that he fired a gun several times into the room occupied by Hunter. The jury could have inferred from Smith's actions that he intended to commit a violent injury to Hunter, despite his protest to the contrary. See *Jordan v. State*, 322 Ga. App. 252, 254 (2) (744 SE2d

8

447) (2013) (jury could infer defendant intended to shoot victim from evidence that defendant fired shots in victim's direction). "A jury may infer criminal intent from the circumstances, [cit.] and there is a rebuttable presumption that '(a) person of sound mind and discretion . . . intend(s) the natural and probable consequences of his acts.'" Id. (quoting OCGA § 16-2-5).

Consequently, when the trial court declined to give Smith's requested jury charge on accident, trial counsel was faced with the dilemma of whether to present potentially damaging evidence in order to get the accident charge. Instead, trial counsel chose to highlight in closing argument the evidence that suggested the gun had discharged accidentally. We cannot say that this decision fell outside the wide range of reasonable professional lawyering such that no reasonable lawyer at the trial could have acted, in the circumstances, as Smith's trial counsel acted. See *Bridges*, 286 Ga. at 537 (1). Accordingly, Smith has not shown that his trial counsel was deficient in failing to change her advice that he not testify.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*