313 Ga. 218
FINAL COPY

S21A1096. PAYNE v. THE STATE.

McMILLIAN, Justice.

Lowe Payne appeals his convictions for felony murder and other crimes arising out of the shooting death of Carldrake Finister.[1] On appeal, Payne asserts that the trial court erred when it admitted evidence of prior difficulties between the parties and that trial

---

[1] Finister was killed on August 28, 2017, and in October 2017, a Paulding County grand jury indicted Payne for one count of malice murder (Count 1), one count of felony murder (Count 3), one count of aggravated assault (Count 5), and three counts of possession of a firearm during the commission of a felony (Counts 2, 4, and 6).

At a trial conducted from January 6 through 10, 2020, a jury found Payne guilty on all counts except malice murder. The trial court sentenced Payne to life in prison without the possibility of parole for felony murder and a consecutive five-year term in prison for possession of a firearm during commission of a felony. Count 2 was nolle prossed, and Payne's other convictions merged for sentencing purposes.

Payne filed a timely motion for new trial on January 15, 2020, which was amended through new counsel on November 9, 2020. After a hearing, the trial court denied the motion as amended on March 23, 2021. Payne timely filed a notice of appeal on April 19, 2021; the case was docketed to the August 2021 term of this Court and submitted for a decision on the briefs.

counsel was deficient for failing to admit a key piece of exculpatory evidence and for failing to request the trial court to reopen the evidence at the jury's request.

The evidence presented at trial showed that on August 28, 2017, around 10:00 p.m., Daquane Trice picked up Payne and his daughter from Payne's place of work, a restaurant in Hiram. Trice testified that they first drove to Chase Bank, where Payne took out cash to purchase marijuana from him, and then to Payne's house in the Vista Lake subdivision, located in Paulding County. The victim, Finister, as well as his girlfriend, Korie Peterson, also lived in Vista Lake at the time and were acquainted with Payne. Peterson testified that, around this same time on August 28, she picked up Finister and drove him to Vista Lake's tennis courts, where they smoked marijuana together.

After Trice dropped off Payne's daughter at Payne's house, he drove with Payne to the tennis courts. By Trice's account, they were looking for a place to smoke marijuana, but Payne testified that they were just going to "hang out" and "kick it." Trice explained that

2

while driving to the tennis courts, he saw Peterson's car parked there and decided to go smoke elsewhere. But, when Finister and Trice subsequently spoke on the phone, Finister asked Trice to come back and sell him marijuana, so Trice drove back to the courts and parked a few spaces away from Peterson's parked car.

According to Payne, this phone call was confusing and upsetting to him. Payne testified that he felt Trice was trying to "set [him] up," because Payne had made it clear to Trice that he did not want to be around Finister. When Payne saw Peterson's car, he assumed she was with Finister and wanted to leave the area to avoid them because a few days earlier, Payne had received a text message from Finister that said Finister was going to "smoke" Payne the next time Finister saw him.[2] Payne explained that he interpreted this as a threat, meaning that Finister intended to kill him.

After Trice parked, Finister walked up to Trice on the driver's side of the car to purchase the marijuana while Trice and Payne were still sitting inside the car. Trice testified that Finister was

---

[2] The word "smoke" was represented by a smoke emoji.

3

"goofy" and "laughing" when he approached the car, until Payne brought up the threatening text message. According to Trice, Payne said, "I heard you want to smoke [me]," to which Finister replied, "[Y]eah, because [of] what you told [Peterson,] that you was going to kill me." Finister and Payne began arguing, and the situation continued to escalate when Payne got out of the car and met Finister around the back side. Peterson exited her car when she saw Payne get out of Trice's car and grab his gun from the passenger side floorboard.[3] Peterson heard Payne say, "[Y]ou touch me, I'm going to shoot you," and she tried to get between the two men to calm them down. Finister then poked Payne on the shoulder with his finger; Payne raised his gun, hesitated a little, and then shot Finister three times while Finister was standing, and at least once after he had fallen to the ground. Trice also testified that he did not see Finister hit or shove Payne and that Finister was unarmed. After the shooting, Peterson drove away from the scene and Payne walked

---

[3] Payne had a license to carry a weapon and was known to carry a gun.

away.[4]

Trice called 911 and waited with Finister for help to arrive. The 911 operator testified that the call was made at 11:04 p.m., and a recording of the call was played for the jury. During the call, Trice told the operator that he did not know who shot Finister and that he was not present for the incident. During subsequent interviews with police, however, Trice admitted that Payne was the shooter. Police officers also interviewed Peterson, who confirmed Payne as the shooter. When paramedics arrived minutes later, Finister was dead. Police recovered three nine-millimeter shell casings and a marijuana cigarette from the scene. A GBI crime lab expert testified that the shell casings found at the scene and the bullets and bullet fragments recovered from the victim's body were fired from the same nine-millimeter Glock pistol.

Payne testified at trial to the following, slightly different, sequence of events. When Finister approached Trice's car to

---

[4] A security camera recording from Vista Lake confirms the general timeline of events and was shown to the jury, but, because of poor video quality, it shows only the general movement of figures and vehicles.

purchase the marijuana, Finister saw Payne and said, "[O]h, you with this n*****." This prompted Payne to ask Finister whether he was serious when he said he would "smoke" him, and Finister replied, "[Y]es." Finister said he wanted to kill Payne because of Payne's friendship with Peterson. Trice then began saying things to intentionally make Finister more upset. Payne remained calm at first, but the situation was escalating. Because Finister was threatening him, Payne asked if he had a gun. Finister replied, "[W]hat you think[?]" Payne interpreted this as Finister saying he was armed, so Payne stepped out of the car with his gun. Finister then came around the back side of the car, still threatening Payne, and grabbed Payne by the neck. Payne was able to get Finister off him, but he saw Finister's hand go toward his waistband.[5] Payne believed Finister was "about to try to follow up on his words . . . to

_____

[5] On cross-examination, Payne said that when Finister reached for his waistband, he saw the outline of a gun. The prosecutor asked why he never mentioned seeing the outline of a gun before, and Payne replied that no one had ever asked him. The prosecutor then questioned Payne about an October 1, 2019 immunity hearing, where Payne testified that he did not see a gun. Payne explained that during that hearing, he was asked if he saw a gun when Finister was standing at the driver's side door and Payne was still sitting in the passenger seat, and at that time he did not see a gun.

smoke" him, so he "opened fire." Payne said he was not counting the shots and did not pause once he started shooting, but disagreed that he shot Finister after Finister was already on the ground.

To further support Payne's theory of self-defense, trial counsel elicited testimony from Payne about a photograph of Finister holding a gun. Payne testified that he saw this picture in March 2017 and that Finister had previously told Payne that he had shot somebody before. Payne testified that he took Finister's threats seriously because of the threatening text message, Finister's statement that he previously shot someone, the picture of Finister holding a gun, and because the pair had an altercation about eight months prior to the fatal shooting.

One of Finister's best friends, Brandon Ballard, testified about the specifics of this prior altercation. Ballard explained that in January 2017, he was with Payne and Finister at Finister's house. Payne and Finister began to engage in horseplay, which later escalated into a fistfight. After the initial scuffle, the two moved outside and agreed to fight each other. The fight lasted about 30

seconds, and Finister got the best of Payne. As Ballard and Payne were walking away, Payne fired his weapon in the vicinity of Finister's home.[6] Ballard later convinced Payne to call Finister and apologize, which Payne did, but Finister did not accept the apology. Ballard testified that after this incident occurred, he heard Payne make threats on multiple occasions about shooting Finister, but Ballard did not believe Payne was serious.

1. In his first enumeration of error, Payne asserts that the trial court erred by admitting Ballard's testimony regarding the January 2017 altercation because the incident did not qualify as a prior difficulty between Payne and Finister. See OCGA § 24-4-404 (b) ("Rule 404 (b)").[7] However, at trial, Payne based his objection to Ballard's testimony on the State's alleged failure to provide the requisite notice under Rule 404 (b) but did not object on the ground he now asserts on appeal. Thus, Payne failed to preserve this error for ordinary appellate review.[8] See OCGA § 24-1-103 (a) (1) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or motion to strike appears of

8

record, stating the specific ground of objection . . . .”). See also Dunbar v. State, 309 Ga. 252, 256 (3) (845 SE2d 607) (2020) (“In order to preserve an objection for [ordinary] appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered.” (citation and punctuation omitted)).

---

[6] Payne's testimony about this prior incident matches Ballard's. Ballard had his back turned to Payne at the time and did not see where the gunshots were aimed, but Ballard testified that he was close enough that he "could spit on [Finister's] house." Payne admitted that he fired his pistol that day, but he denied firing the shots "towards" Finister's house.

[7] OCGA § 24-4-404 (b) provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a crimina

proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

[8] That Payne later asserted this issue in his amended motion for new trial is also insufficient to preserve this error for ordinary appellate review. See *White v. State*, 305 Ga. 111, 113 n.2 (823 SE2d 794) (2019) (analysis limited to review for plain error where appellant failed to object at trial to admission of testimony on the basis later raised in amended motion for new trial); *State v. Herrera-Bustamante*, 304 Ga. 259, 263 (2) (a) (818 SE2d 552) (2018) (ordinary appellate review precluded where argument raised for first time in motion for new trial).

The unavailability of ordinary appellate review does not end our analysis, however, because Payne's evidentiary claim is still "subject to review on appeal for plain error affecting substantial rights." *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016) (citation and punctuation omitted).

> To show plain error, [Payne] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

*State v. Herrera-Bustamante*, 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018) (citation and punctuation omitted). Under OCGA § 24-4-404 (b), evidence of a defendant's prior acts toward another person may be admissible into evidence "when the defendant is accused of a criminal act against that person, where the nature of the relationship between the defendant and the victim sheds light on the defendant's motive in committing the offense charged." *Flowers v. State*, 307 Ga.

618, 621 (2) (837 SE2d 824) (2020). Here, we see no obvious error in the trial court's admission of Ballard's testimony about the prior incident between Finister and Payne to show Payne's motive with respect to the charged crimes, especially in light of the limiting instruction given by the court. Because Payne has failed to carry his burden to show obvious error in admitting this evidence, this enumeration of error fails. See *Herrera-Bustamante*, 304 Ga. at 264 (2) (b) ("We need not analyze all of the elements of [the plain error] test when, as in this case, the defendant has failed to establish one of them."). See also *State v. Kelly*, 290 Ga. 29, 32 (1) n.2 (718 SE2d 232) (2011) ("While we will review properly enumerated and argued claims of jury instruction error regardless of whether the appealing party specifically casts the alleged infirmity as 'plain error,' parties should be advised that the hurdle to establishing plain error is high . . . and therefore that the failure to specifically articulate how the alleged error satisfies this high standard increases the likelihood that their claims in this regard will be rejected.").

2. Payne also contends that trial counsel rendered

11

constitutionally ineffective assistance in several respects. In order to prevail on a claim of ineffective assistance of counsel, Payne must show "both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense." *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016). See also *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Payne must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Lockhart*, 298 Ga. at 385 (2) (citation and punctuation omitted). To meet the prejudice prong, Payne must establish "a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different." Id. at 385 (2). And, "[i]f the defendant fails to satisfy either the 'deficient performance' or the 'prejudice' prong of the *Strickland* test, this Court is not required to examine the other." *Redding v. State*, 297 Ga. 845, 850-51 (5) (778 SE2d 774) (2015).

12

(a) Payne first argues that trial counsel was ineffective because he did not introduce into evidence the text message sent from Finister to Payne that said Finister would "smoke" Payne. While the message itself was not introduced into evidence, its existence and content were not disputed and Payne and Peterson both testified to it. What was disputed, though, was how Payne responded to the text. During her testimony, Peterson was shown an exhibit containing her own text message to an unnamed person that said Payne had sent laughing emojis in response to the text message from Finister, which suggested that Payne did not take Finister's threat seriously. On re-cross-examination, however, Peterson was presented with another exhibit, which had been marked but not admitted into evidence, that contained a screenshot of the text message from Finister to Payne saying Finister would "smoke" Payne, and she testified that there were no laughing emojis present in the exhibit.[9] Payne also testified that he did not send laughing

_____

[9] Although the screenshot of the text with the smoke emoji was marked as an exhibit at trial, it was not admitted at trial or at the motion for new trial

emojis to Finister in response to the text. Payne contends that his trial counsel was ineffective in failing to move the screenshot of Finister's text message to Payne into evidence so the jury could see that the screenshot did not include any response with laughing emojis, and that Payne's credibility would have been boosted by the introduction of the screenshot.

At the hearing on Payne's motion for new trial, trial counsel testified that he did not move the text message into evidence because "all that information was in the record and in before the jury" and the prosecutor had previously indicated to him that she would object to its admission and had provided some case law supporting the objection, although counsel could not recall the grounds for the objection. In light of the testimony presented, a reasonable attorney could have made the strategic decision not to seek to admit the

hearing. However, on appeal, the State claims that it is likely that the same or a similar document was admitted as Defense Exhibit 7 at the pretrial immunity hearing. That document is a screenshot picture of Finister's text to Payne, and does not show any response to the smoke emoji text. Because the State's assertion is consistent with how the exhibit was described at trial and Payne does not disagree, we are assuming for purposes of this analysis that the exhibit marked at trial was the same as Defense Exhibit 7.

14

screenshot because to the extent it indicated that there was no response to the "smoke" text, it was cumulative of other testimony given at trial. Moreover, because the screenshot was of the "smoke" text only, its admission would not establish whether Payne sent laughing emojis in response to Finister's "smoke" text. "[A] tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it." *Cochran v. State*, 305 Ga. 827, 830 (2) (828 SE2d 338) (2019) (citation and punctuation omitted). See also *Robinson v. State*, 278 Ga. 31, 37 (3) (d) (597 SE2d 386) (2004) ("As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (citation and punctuation omitted)). Because Payne has failed to establish that trial counsel performed deficiently by failing to admit the text message into evidence, his claim of ineffective assistance of counsel on this ground fails.

(b) Payne next contends that counsel was ineffective for failing to request that the trial court reopen the evidence to admit the

15

screenshot of Finister's text message at the request of the jury. During jury deliberations, the court received a note from the jurors requesting to see the exhibit shown to Peterson that contained Finister's text message to Payne. After consultation with the parties, the court responded to the request by telling the jury that the exhibit had not been admitted into evidence. Trial counsel did not request that the trial court reopen evidence to admit this exhibit into evidence so the jury could review it during deliberations.

Pretermitting whether trial counsel's decision not to move to reopen evidence was based on reasonable trial strategy, and that he was therefore deficient, Payne must still show prejudice. The record shows that both Payne and Peterson testified to the content of Finister's text message to Payne. Peterson also testified that this exhibit contained no laughing emojis. Payne testified that he sent no laughing emojis to Finister. Because the exhibit was apparently a screenshot of the "smoke" text with no response, the admission of the text message into evidence would have been cumulative of the testimony about the "smoke" text and, as discussed above, would not

16

have established whether Payne responded with laughing emojis. Payne has therefore failed to show how the admission of this text message into evidence would have altered the outcome of the trial. See *Timmreck v. State*, 285 Ga. 39, 42 (3) (673 SE2d 198) (2009) (concluding counsel was not ineffective for withdrawing request that lab report be admitted into evidence where report would have been cumulative of testimony at trial).

Moreover, "[i]t is well settled that the decision to reopen evidence is a matter that rests within the sound discretion of the trial court." *Walton v. State*, 303 Ga. 11, 16 (4) (810 SE2d 134) (2018). Payne has made no effort to show that the trial court would have reopened the evidence to allow the admission of the text message, even if his counsel had made the request, and the trial court would have acted well within its discretion in denying any such request. Therefore, we conclude that Payne has failed to show prejudice under *Strickland*, and this claim of ineffective assistance of counsel fails. See id. (no abuse of discretion to refuse to reopen record to allow for additional testimony); *Billings v. State*, 293 Ga. 99, 107 (7)

17

(745 SE2d 583) (2013). ("The failure of [the defendant's] trial counsel to make a motion that the court was authorized to deny does not establish ineffective assistance by that counsel.").

*Judgment affirmed. All the Justices concur.*

Decided February 15, 2022.

Murder. Paulding Superior Court. Before Judge Bucci.

*David S. West*, for appellant.

*Matthew W. Rollins, Acting District Attorney, A. Brett Williams, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.